### DOUGLAS et al. v. EDWARDS, Collector of Internal Revenue.

(District Court, S. D. New York. December 18, 1922.)

**1. Internal revenue ☞7—Income tax; dividends attributed to latest profits or surplus.**

Under Revenue Act 1916, § 31b, added by Act Oct. 3, 1917, § 1211 (Comp. St. 1918, § 6336z), a corporation without reduction of its capital stock, could not declare a dividend from its depletion reserve, and thereby enable the recipients to escape the tax thereon, at a time when it had current net earnings or earnings in its surplus fund, which accrued to it on or after March 1, 1913, from which the dividend could have been paid.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Internal revenue ⬅➡7—Income tax; dividends received as capital distributions from depletion reserve; "undivided profits or surplus."**

In Revenue Act 1916, § 31b, added by Act Oct. 3, 1917, § 1211 (Comp. St. 1918, § 6336z), providing that "any distribution" made to stockholders "in 1917 or subsequent tax years shall be deemed to have been made from the most recently accumulated undivided profits or surplus," the words "undivided profits or surplus" are not limited to such profits and surplus as have been definitely ascertained by balancing and closing the books before the dividend is declared, but include the net profits of the current year, and the provision applies, not only to ordinary dividends, but also to dividends declared as capital distributions from depletion reserve, where there is no reduction of capital stock.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Undivided Profits.]

At Law. Action by Archibald Douglas and others, as executors of the will of James Douglas, deceased, against William H. Edwards, Collector of Internal Revenue. Verdict for defendant directed.

Douglas, Armitage & McCann, of New York City, for plaintiffs.

William Hayward, U. S. Atty., and Richard S. Holmes, Sp. Asst. U. S. Atty., both of New York City (James J. Cosgrove, of New York City, of counsel), for defendant.

MACK, Circuit Judge. This suit is brought by the executors of James Douglas, deceased, to recover the sum of $173,579.72, assessed as income tax against funds received by the decedent as part of so-called "depletion distributions" made by the Phelps Dodge Corporation to its shareholders in September and December, 1917. It is the contention of the plaintiffs that these distributions were not dividends in the ordinary course of the business, but were liquidating dividends specifically made from a depletion reserve set up by the corporation under the direction of, and in accordance with, the regulations of the Treasury Department, and therefore constituted return of capital to its stockholders. The solicitor for the Commissioner of Internal Revenue rejected this contention, on the ground that under section 31 (b) of the Revenue Act of 1916, added by section 1211 of the Act of October 3, 1917 (Comp. St. 1918, § 6336z), a corporation could not declare a dividend out of profits earned prior to March 1, 1913, or from a depletion reserve—and thereby enable the recipients to escape the tax thereon—at a time when the company had earnings in its surplus fund which accrued to it on or after March 1, 1913, from which the dividend or dividends could have been paid, in any event not without a reduction of its capital stock.

[1, 2] Plaintiff's Exhibit D, which is annexed hereto as Schedule I, gives a summary of the changes in the financial condition of the Phelps Dodge Corporation during the period of 1912–1917:

SCHEDULE I.—PLAINTIFF'S EXHIBIT D.—*Phelps Dodge Corporation.*

MEMORANDUM IN RE CHANGES IN FINANCIAL CONDITION 1912–1917.

| | 1912 | 1913 | 1914 | 1915 | 1916 | 1917 | Total |
|---|---|---|---|---|---|---|---|
| Income before deducting depletion | .......... | $11,120,368.73 | $8,216,266.66 | $10,501,310.77 | $23,675,783.01 | $22,456,906.32 | $75,970,635.49 |
| Depletion, at Treasury Department rates | .......... | 4,747,251.87 | 4,572,808.56 | 4,877,786.88 | 5,925,161.34 | 5,714,419.26 | 25,837,427.91 |
| Profit | .......... | 6,373,116.86 | 3,643,458.10 | 5,623,523.89 | 17,750,621.67 | 16,742,487.06 | 50,133,207.58 |
| Dividends paid from earned surplus | .......... | 7,425,000.00 | 6,300,000.00 | 9,000,000.00 | 14,625,000.00 | 10,800,000.00 | 48,150,000.00 |
| Distributions of proceeds of depletion | .......... | .......... | .......... | .......... | .......... | 3,600,000.00 | 3,600,000.00 |
| Total distributions to stockholders | .......... | 7,425,000.00 | 6,300,000.00 | 9,000,000.00 | 14,625,000.00 | 14,400,000.00 | 51,750,000.00 |
| Capital expenditures: | | | | | | | |
| Mines | .......... | 678,421.98 | 183,796.91 | 488,141.54 | 1,508,138.54 | 3,796,663.03 | 6,287,558.18 |
| Plants | .......... | 1,088,392.37 | 1,435,008.46 | 1,668,945.69 | 1,508,655.32 | 1,414,602.28 | 7,115,684.12 |
| Investments | .......... | 136,386.38 | 390,213.44 | 4,393.00 | 249,101.17 | 585,267.02 | 77,945.79 |
| Total capital expenditures | .......... | 1,903,200.73 | 880,998.11 | 2,152,694.23 | 2,767,692.89 | 6,796,602.33 | 13,481,188.09 |
| Balance sheets, 31st December: | | | | | | | |
| Mines | $132,285,000.00 | 128,216,170.11 | 123,459,564.64 | 119,069,919.30 | 114,652,896.50 | 112,735,130.27 | .......... |
| Plants | 5,281,367.23 | 5,911,154.45 | 8,253,319.46 | 9,440,549.51 | 10,455,211.45 | 11,424,535.18 | .......... |
| Investments | 3,151,535.25 | 3,287,921.62 | 2,897,708.18 | 3,893,315.18 | 2,644,314.01 | 3,129,481.03 | .......... |
| Current assets derived from depletion | .......... | 4,068,689.89 | 8,825,435.36 | 13,265,060.70 | 17,632,103.50 | 15,919,869.73 | .......... |
| Current assets—other | 12,557,704.22 | 10,732,647.48 | 6,131,155.01 | 1,521,840.85 | 3,931,901.75 | 8,359,798.06 | .......... |
| Total assets | 153,275,605.69 | 153,235,723.55 | 149,567,161.65 | 146,190,705.54 | 149,316,327.21 | 151,668,814.27 | .......... |
| Capital stock | 45,000,000.00 | 45,000,000.00 | 45,000,000.00 | 45,000,000.00 | 45,000,000.00 | 45,000,000.00 | .......... |
| Surplus prior to 1913 | 108,275,606.69 | 107,223,723.55 | 104,567,181.65 | 101,190,705.54 | 101,190,705.54 | 97,590,705.54 | .......... |
| | | | | | 3,125,621.67 | 9,068,108.73 | .......... |
| Total capital | 153,275,606.69 | 152,223,723.55 | 149,567,181.65 | 146,190,705.54 | 149,316,327.21 | 151,668,814.27 | .......... |

It appears therefrom that on March 1, 1913, the Phelps Dodge Corporation[1] had net assets aggregating $153,275,606.69; it had capital stock outstanding of a par value of $45,000,000, and surplus of $108,-275,606.69, of which it is agreed $45,000,000 represented a paid-in surplus, leaving an earned surplus of $63,275,606.69. The dividends distributed to the stockholders in 1913 exceeded the net profits of the corporation for that year by $1,051,883.14; in 1914, by $2,653,541.90; and in 1915, by $3,376,476.11. In 1916, however the net profits exceeded the dividends by $3,125,621.67, and in 1917 the net profits exceeded the dividends, including the so-called depletion dividends, by $2,342,-487.06.

It is the contention of the plaintiffs that the directors in each of these years believed they were paying dividends out of the company's net income, inasmuch as the depletion was taken on the books of the company at a considerably less amount than that ultimately allowed by the government on March 2, 1920. Plaintiffs also point out that the total distributions to the stockholders during the years 1913 to 1917 exceeded the net income for those years on the basis of the depletion reserves allowed by the government by $1,616,000. The dividends or distributions declared on September 13, 1917, and December 13, 1917, and payable on the 28th of these months, purported to be made from a depletion account. The resolutions authorizing the September distribution read as follows:

"Whereas, this company, in accordance with the income tax section of the Tariff Act of 1913 and with the Income Tax Law of September 8, 1916, has yearly, in computing its income deducted therefrom a reasonable allowance for depletion of its mines, based upon the fair market value thereof as of March 1, 1913; and

"Whereas, the Income Tax Law and the rulings of the Department of Internal Revenue provide for a separation of said deductions from income and provide further that payments to stockholders from said depletion account will be a return of capital invested, and are not subject to income tax in the hands of the shareholders:

"Therefore resolved, that this company distribute among its stockholders from said depletion account three dollars a share, to be paid on September 28, 1917, to stockholders of record on September 24, 1917, the total amount so paid to be deducted from said depletion account."

The December resolution was identical in form. These depletion dividends, when declared, were credited on the books of the corporation to a new account which was opened, entitled "Distribution from Reserve for Depletion," and when the dividends were paid the cash account was credited and the account entitled "Distribution from Reserve for Depletion" was debited. Although the corporation had at the time two depletion accounts, one called the "Depletion Reserve" and the other "Ore Reserve," neither the regular "Depletion Reserve" account nor the "Ore Reserve" account was charged with the amount of the depletion dividends; no part thereof was deducted from either of these accounts upon the books of the company, and the invested capital of the corporation was not reduced in the excess tax return filed by it,

[1] I refer to the Phelps Dodge Corporation throughout this opinion, disregarding change in name and corporate readjustments and consolidations not material for the disposition of this case.

by the amount of any depletion dividends declared and paid in 1917; naturally no reduction in the capital stock of the corporation was thereby effected.

The so-called depletion dividend of September amounted to $1,350,-000, and the plaintiffs' testator, Dr. James Douglas, received in respect of the 41,050 shares of the capital stock of the corporation held by him $123,150. The December dividend amounted to $2,250,000, and Dr. Douglas received $205,250. Dr. Douglas, in his 1917 income tax return, included in his taxable income all dividends received from the corporation except the two depletion dividends, with reference to which he inserted the following note:

Note.—In addition to the moneys received during the year 1917 as reported in the foregoing individual income tax return for 1917, I have received the following amounts:

1917.

Sept. 28—Rec'd as a stockholder from the Phelps Dodge Corporation, 99 John St., New York, N. Y., a distribution from reserve from depletion........................................ $123,150.00
Dec. 28—Ditto .................................................... 205,250.00

Total ............................................. $328,400.00

(1) Plaintiffs, pointing out that the total earnings of the company from March 1, 1913, to December 31, 1917, were $50,183,207.58, that the distribution made during the same period were $51,750,000, leaving an excess of distributions over earnings of $1,616,000, contend that in no circumstances can Dr. Douglas' share of $1,616,000 of the amount distributed as depletion dividends in 1917 be regarded as taxable income accruing subsequent to March 1, 1913. The contention, when analyzed, however, is clearly untenable. Although the directors may have distributed in dividends in 1913, 1914 and 1915 sums in excess of the net earnings for those years, the earned surplus accumulated by the corporation readily enabled them to do so. Under the income tax act of 1913 even these excess distributions from earnings accumulated prior to March 1, 1923, were subject to tax. Lynch v. Hornby, 247 U. S. 339, 38 Sup. Ct. 543, 62 L. Ed. 1149. The law was changed in 1916 and dividends from surplus accumulated prior to March 1, 1913, were exempted from tax. Consequently, if in 1916 and 1917 the corporation had distributed as dividends sums in excess of their net earnings in those years, such excess would have been exempt. But, as has been indicated, the net earnings in both 1916 and 1917 exceeded all the distributions made in those years.

Inasmuch as the net income for 1913 to 1915 was less than the dividends of those years, the excess must have been paid from the surplus on hand March 1, 1913. It was, therefore, part of the dividends of these years, and not the dividends of 1916 and 1917, that came from this surplus. It follows that before December 31, 1915, there had been expended in dividends during 1913, 1914, and 1915, the entire net earnings for those years, and, in addition thereto, a part of the surplus accumulated prior to March 1, 1913. If the dividends paid in the year 1916 are to be charged against the surplus theretofore accumulated, and not against the current earnings of that year, the entire net earn-

ings of that year, $17,750,621.67, would form part of the surplus as of December 31, 1916, an amount more than sufficient to pay both the dividend and depletion distributions made in 1917. If, however, the dividends of 1916 are properly chargeable to the current net earnings of that year, then only $3,125,621.67 of the surplus as of December 31, 1916, would have come from the net earnings of 1916, or of the period subsequent to February 28, 1913. In that case, if the dividends paid in 1917 are not properly chargeable against the net earnings of that year, the ordinary dividends of 1917, paid prior to the depletion distributions, would more than have exhausted this $3,125,621.67, and in that event plaintiffs' contention that the depletion distribution necessarily came from surplus accumulated prior to March 1, 1913, would be sound.

(2) It is necessary, therefore, to consider next the interpretation of the act in question. And as to that (a) whether ordinary dividends are to be deemed payable only out of accumulated profits and surplus as shown by the last bookkeeping determination, or also, and in the first instance, either in whole or in part out of current net earnings of the year in which they are paid, regardless of whether at the time of payment it shall have been actually and finally determined by inventory and balancing of books that sufficient net profits therefor have been earned; (b) even if ordinary dividends are chargeable first to current undetermined net earnings, whether depletion distributions, unlike such ordinary dividends, may nevertheless be paid out of a depletion reserve or out of surplus earned prior to March 1, 1913, as capital distributions, without reduction of the capital stock.

(a) Section 31 of the Revenue Act of 1916, as supplemented by the Revenue Act of 1917, reads as follows:

"Sec. 31. (a) That the term 'dividends' as used in this title shall be held to mean any distribution made or ordered to be made by a corporation, joint-stock company, association, or insurance company, out of its earnings or profits accrued since March first, nineteen hundred and thirteen, and payable to its shareholders whether in cash or in stock of the corporation, joint-stock company, association, or insurance company, which stock dividend shall be considered income, to the amount of the earnings or profits so distributed.

"(b) Any distribution made to the shareholders or members of a corporation, joint-stock company, or association, or insurance company, in the year nineteen hundred and seventeen, or subsequent tax years, shall be deemed to have been made from the most recently accumulated undivided profits or surplus, and shall constitute a part of the annual income of the distributee for the year in which received, and shall be taxed to the distributee at the rates prescribed by law for the years in which such profits or surplus were accumulated by the corporation joint-stock company, association, or insurance company, but nothing herein shall be construed as taxing any earnings or profits accrued prior to March first, nineteen hundred and thirteen, but such earnings or profits may be distributed in stock dividends or otherwise, exempt from the tax, after the distribution of earnings and profits accrued since March first, nineteen hundred and thirteen, has been made. This subdivision shall not apply to any distribution made prior to August sixth, nineteen hundred and seventeen, out of earnings or profits accrued prior to March first, nineteen hundred and thirteen."

It seems to me that the congressional intent is clear. Distributions to shareholders are to be regarded as made from current earnings and the most recently accumulated surplus. Congress, in my judgment,

did not intend to lay down a narrow rule, to be whittled away by technical definitions of the terms surplus, undivided profits, dividends, and distributions. Nor did it intend to recite a mere prima facie rule which could be arbitrarily set aside by the form of the bookkeeping entries. It is to be assumed that Congress desired that, so far as possible, the tax should be regulated by the substance of things and not their form, and that taxation should not fall more lightly upon one man than upon another because of ingenuity in bookkeeping methods.

If plaintiffs' contention that "the most recently accumulated undivided profits or surplus" is necessarily limited to such profits and surplus as are definitely ascertained by closing the books, gross inequality might result dependent upon the number of times in a fiscal year that the books are closed. Furthermore, if the contention were sound not merely as a construction of the act, but—and plaintiffs so urge—as the proper relation of dividend distributions to earnings from the standpoint of sound accounting principles and usual business practice, it would be applicable also to the 1916 dividends. The result, as heretofore stated, would be that the entire large earnings of 1916 would be applicable to the 1917 distributions, both ordinary and depletion. True, in that case, there would be a recovery because the tax would have been assessable at 1916 instead of 1917 rates.

The practice, however, of this very corporation and of the deceased stockholder indicates what in my judgment is the sounder view. The company, in its annual report, while stating that the earliest dividends, paid in March, 1917, were paid out of profits accrued during the year 1916, declared that the regular ordinary and extra dividends—these do not include the depletion distributions—paid in June, September, and December, 1917, were paid out of earnings for the year 1917. And Dr. Douglas, as heretofore stated, so returned them in his income tax report for the year 1917. Though the books were not balanced and net profits carried into the undivided profits and surplus account at the time of the payment of any of these dividends, it was obvious—as it ordinarily would be—that large current profits were being made and distributed from time to time throughout 1917.

In my judgment, Congress did not intend, and there is nothing in the legislative history of the enactment of section 31 (b) reasonably considered that would indicate that Congress intended, to use the terms undivided profits or surplus in a strict technical sense which would exclude from their embrace current profits. If Congress had so intended, it would have resulted in nearly all corporate dividends declared in the war year 1917 being taxed at the lower rates prescribed for 1916 or not being taxed at all. Subsequent legislation indicates not a change but a clarification of that legislative intent. Section 201 (b) of the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6336⅛b) provided:

"Any distribution shall be deemed to have been made from earnings or profits unless all earnings and profits have first been distributed."

And the same numbered section of the Revenue Act of 1921 (42 Stat. 228) is expressive of the same intent:

"For the purposes of this act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the

extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed. If any such tax-free distribution has been made the distributee shall not be allowed as a deduction from gross income any loss sustained from the sale or other disposition of his stock or shares unless, and then only to the extent that, the basis provided in section 202 exceeds the sum of (1) the amount realized from the sale or other disposition of such stock or shares, and (2) the aggregate amount of such distributions received by him thereon."

That undivided profits as used in section 31 (b) was intended to include current profits earned during the current year, was certainly the contemporaneous construction placed upon it not only by Dr. Douglas but by taxpayers generally. Furthermore, article 107 of Treasury Regulations No. 33 (revised) provided:

"Any distribution made to shareholders in the year 1917 or subsequent years (except any distribution of dividends made prior to August 6, 1917, out of earnings or profits accrued prior to March 1, 1913) shall be deemed to have been made from the most recently accumulated undivided surplus or profits, and shall constitute income of the distributee for the year in which received, and shall be taxed to such distributee at the rates prescribed by law for the years in which such surplus or profits were earned by the distributing corporation.

*"Thus, if a corporation distributed dividends in 1917, such dividends will be deemed to have been paid from the earnings of 1917, and the recipient, if an individual, will be liable to additional tax, if any, and if a corporation to income tax at the rates for the year 1917, unless it is shown to the satisfaction of the Commissioner of Internal Revenue that at the time such dividends were paid the earnings up to that time were not sufficient to cover the distribution,* in which case the excess over the earnings of the taxable year will be deemed to have been paid from the most recently accumulated surplus of prior years and will be taxed at the rate or rates for the year or years in which earned.

"A corporation declaring and paying dividends out of a surplus or earnings accumulated over a period of years should make a record in its books of the amount of dividends paid out of each year's undistributed surplus or profits and advise the stockholders accordingly, in order that the dividends received by them may be taxed at the respective rates prevailing during the years in which the surplus or profits so distributed were earned. * * *"

The Commissioner of Internal Revenue was not satisfied that at the time these so-called depletion dividends were paid the earnings up to that time were not sufficient to cover such distribution. The audit of the 1917 books indeed proves that the net earnings of 1917 were more than sufficient to pay all the distributions made, and there is nothing to indicate that a pro rata apportionment thereof is not in accordance with the facts. Under such apportionment the net earnings were sufficient at the respective times for all of the distributions.

(b) Depletion distributions without reduction of capital stock are not to be differentiated in the matters here under consideration from ordinary dividends. Depletion reserves are a mere bookkeeping account. The distribution comes from the general assets of the company; it results in a reduction thereof. If a similar reduction were made in the capital stock liability by some method permissible under the laws of the state of its creation, a different situation might be presented. But this was not done in the instant case. Calling the distribution of cor-

porate assets a distribution of depletion reserve does not make it a payment of capital instead of income when there are net earnings or accumulated surplus sufficient to meet it. And, in my judgment, the act is correctly interpreted in paragraph 26 of Regulations No. 33 of the Treasury, issued thereunder in January, 1918, reading as follows:

"*Dividend from Depletion Reserve.*—A reserve set up out of gross receipts and maintained by a corporation for the purpose of making good any loss or wasting of capital assets on account of depletion is not to be considered a part of the earned surplus of the company but a reserve for the return or liquidation of capital. A dividend paid from such reserve will be considered a liquidating dividend and will not constitute taxable income to the stockholder except to the extent that the amount so received is in excess of the capital actually invested by the stockholder in the shares of stock held by him, and with respect to which the distribution was made. *No dividend will, however, be deemed to have been paid from such reserve except to the extent that such dividend exceeds the surplus and undivided profits of the corporation at the time of such payment, and unless the books, records, published statements, etc., of the corporation clearly indicate a corresponding reduction of capital assets resulting from such payment.*"

Inasmuch as the net earnings for 1917 were at the time of these distributions, as heretofore stated, more than sufficient to meet them, the claim for refund was properly rejected. A verdict for defendant will therefore be directed.

Since this opinion was prepared, my attention has been called by the defendant's counsel to the opinion of Judge Cooper in Harden v. Irwin (D. C.) 285 Fed. 402, an opinion in which I entirely concur.